IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TRACEY M. LENIHAN, | CASE NO. 1:24-cv-585 |
| Plaintiff, | DISTRICT JUDGE |
| | PAMELA A. BARKER |
| vs. | |
| | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | JAMES E. GRIMES JR. |
| Defendant. | **REPORT & RECOMMENDATION** |

Plaintiff Tracey Lenihan filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court vacate and remand the Commissioner's decision.

**Procedural history**

In May 2020, Lenihan filed an application for disability insurance benefits and supplemental security income, alleging a disability onset date of

January 1, 2019,[1] and claiming she was disabled due to post-traumatic stress disorder, anxiety, chronic obstructive pulmonary disease, carpal tunnel, acid reflux, high blood pressure, and high cholesterol. Tr. 788, 798, 833. The Social Security Administration denied Lenihan's application and her motion for reconsideration. Tr. 599, 609, 619–20. Lenihan then requested a hearing before an Administrative Law Judge (ALJ). Tr. 694.

In April 2021, an ALJ held an administrative hearing. Lenihan and a vocational expert testified. Tr. 574–98. In July 2021, the ALJ issued a written decision finding that Lenihan was not disabled. Tr. 642–62. The Appeals Council granted Lenihan's request for review and remanded the case to the ALJ. Tr. 664–66. The ALJ held a second hearing in February 2023, in which Lenihan and a vocational expert testified. Tr. 552–74. The next month, the ALJ issued a written opinion finding that Lenihan was not disabled. Tr. 16–31. The ALJ's decision became final on January 31, 2024, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Lenihan filed this action on March 29, 2024. Doc. 1. She asserts the following assignment of error:

> Whether the ALJ's assessment of Plaintiff's physical symptom allegations complied with the requirements of SSR 16-3p.

Doc. 7, at 12.

---

[1]     "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

**Evidence**

*Personal and vocational evidence*

Lenihan was born in 1969 and was 49 years old on her alleged disability onset date. Tr. 30. She attended a year of college and used to perform secretarial-type work. Tr. 579.

*Relevant medical evidence*

In mid-May 2020, Lenihan had a virtual appointment with a neurologist for carpal tunnel syndrome in her right, dominant hand. Tr. 3702. She denied symptoms in her left hand. Tr. 3703. Lenihan listed her symptoms as pain, numbness, tingling, and "dropping … things from her hands." Tr. 3702–03. Her pain at times radiated into her forearm, and it prevented her from writing and opening jars. Tr. 3702–03. She worked in an office and "type[d] quite a bit during the day." Tr. 3703. Lenihan stated that she had seen her primary care doctor for this problem for seven to eight years and had consulted an orthopedist, who told her that her right thumb was "bone on bone," prescribed a wrist brace, and recommended surgery "for her thumb movements/issues." Tr. 3703. Lenihan had received cortisone injections in her thumb, which helped "for only two weeks or so." Tr. 3703. She applied a prescribed topical medicine, believed to be Voltaren gel, which helped "minimally." Tr. 3703.

Later that month, an x-ray of Lenihan's right wrist showed no acute fractures or misalignment and mild degenerative changes of the first

3

carpometacarpal joint (where the thumb meets the hand) with bone spurs. Tr. 2244.

In June 2020, Lenihan had an MRI of her right wrist, which showed moderate osteoarthritis in her carpometacarpal joint and the first metacarpophalangeal joint (the thumb knuckle). Tr. 2345. It also showed a "split tear" of the extensor carpi ulnaris tendon, which runs along the outside of the wrist and forearm. Tr. 2345.

A week later, Lenihan followed up with orthopedist Michael Keith, M.D. Tr. 2342. At this visit, Lenihan rated her pain a ten out of ten. Tr. 2549. She also reported numbness and loss of motion in her right hand and wrist. Tr. 2549. She experienced pain with activity and at rest, and her pain woke her up while she slept. Tr. 2549. Lenihan completed a "pain catastrophizing scale" questionnaire and indicated constant preoccupation with her hand pain. Tr. 2551. Dr. Keith fitted Lenihan with a thumb brace. Tr. 2343.

In July 2020, Lenihan injured her right knee while playing tennis. Tr. 2601.

In August 2020, Lenihan had an EMG of her right arm, which showed "mild right sensory median entrapment mononeuropathy across the wrist," which was consistent with mild carpal tunnel syndrome Tr. 2541–42.

In September 2020, Lenihan followed up with Dr. Keith and complained of numbness and tingling in her right wrist. Tr. 2561. Dr. Keith's exam showed that Lenihan had a positive Tinel's sign at her wrist, indicating nerve

4

irritation, and "more forearm pain." Tr. 2561. Lenihan had reported that a prior Lidocaine and Kenalog injection had helped for two months, so Dr. Keith administered another injection. Tr. 2561.

In February 2021, Lenihan saw Dr. Keith for right arm pain. Tr. 2792. Dr. Keith's exam showed that Lenihan exhibited tenderness at her wrist, carpometacarpal joint, and median nerve area. Tr. 2792. An x-ray showed osteoarthritic changes in Lenihan's thumb joints. Tr. 2798. Dr. Keith administered a Lidocaine and Kenalog injection. Tr. 3062.

In June 2021, Lenihan rated her pain ten-out-of-ten "both on [the] medial and radial side of [her] wrist," and Dr. Keith administered an injection at Lenihan's thumb joint. Tr. 3062.

In August 2021, Lenihan saw Dr. Keith for right thumb pain. Tr. 3064. She reported that the June injection had helped for 45 days. Tr. 3064. She was wearing her prescribed splint. Tr. 3064. Dr. Keith opined that carpometacarpal arthroplasty surgery was Lenihan's "best option." Tr. 3064.

In October 2021, Lenihan saw Dr. Keith and reported that her cardiologist had not her cleared for hand surgery. Tr. 3085. Lenihan said that she experienced "great" right-sided wrist pain and Dr. Keith applied a cast "for pain management." Tr. 3085.

In December 2021, Lenihan saw Dr. Keith and reported carpal tunnel symptoms and thumb pain in her left hand. Tr. 3086. Dr. Keith administered a Lidocaine and Kenalog injection in her left hand. Tr. 3087.

On January 10, 2022, Dr. Keith performed surgery on Lenihan's right hand and wrist—a trapeziectomy, removal of the trapezium bone at the base of the thumb to treat arthritis; carpal tunnel release; distal radial ulnar joint debridement, to tighten the ligaments between the radius and ulna bones; and extensor carpi ulnaris tendon stabilization.[2] Tr. 3098–99, 3148.

Ten days later, Lenihan went to the emergency room for right forearm and wrist pain after she fell while attempting to get out of her car the night before her visit. Tr. 3108.  She described pain in the medial posterior aspect of her forearm and decreased sensation and mobility in her right thumb. Tr. 3108. She had taken a Percocet, which Dr. Keith had proscribed after surgery, but it had not helped her then-present pain. Tr. 3108. Lenihan's exam showed that she had tenderness in her forearm and decreased range of motion in her wrist and thumb. Tr. 3109–10. X-rays showed no acute fracture or dislocation, and "status post recent right hand arthroplasty with resection of trapezium." Tr. 3110. Lenihan was given pain medication and some of her symptoms improved. Tr. 3111. The doctor opined that Lenihan's symptoms were likely due to her aggravating her post-surgical soreness. Tr. 3111. The doctor re-splinted

---

[2]  Dr. Keith's surgery notes incorrectly state that he performed surgery on Lenihan's *left* hand and wrist. Tr. 3098–99. The ALJ wrote that Lenihan had surgery on her *right* wrist to treat her *left* thumb arthritis, Tr. 25, an apparent typo which both parties repeat in their briefs, *see* Doc. 7, at 9; Doc. 9, at 4. The record shows that Lenihan had surgery on her right hand and wrist. *See, e.g.*, Tr. 3110.

Lenihan's right hand and wrist and advised her to attend her scheduled follow-up with her orthopedic doctor. Tr. 3111.

A few days later, Lenihan saw Dr. Keith. Tr. 3136. Dr. Keith reviewed Lenihan's negative x-rays from the emergency room and commented that her thumb seemed stable. Tr. 3136. He applied a thumb cast. Tr. 3136–37.

In March 2022, Dr. Keith removed Lenihan's cast and Lenihan began occupational therapy. Tr. 3143, 3148. Lenihan was able to make a half-fist with her right hand. Tr. 3149. The therapist commented that Lenihan presented with a very stiff wrist, forearm, thumb, and fingers. Tr. 3150. She couldn't straighten her elbow. Tr. 3150. The therapist noted that Lenihan said that her right hand had been in a cast since the fall of 2021. Tr. 3150. Lenihan said that she had not used her arm for any functional tasks, and the therapist anticipated that Lenihan would require "extensive therapy due to stiffness." Tr. 3150.

At her next therapy appointment six days later, Lenihan exhibited limited wrist and forearm motion, which the therapist opined was likely due to her fear of pain with motion. Tr. 3156, 3158. Lenihan reported using her left hand for most activities, which took more time, but she could "complete everything she need[ed] to." Tr. 3156. After exercises, her ranges of motion significantly improved, although they remained limited. Tr. 3158. Her elbow extension increased significantly. Tr. 3158. She displayed severe hypersensitivity over her surgical scars, and the therapist educated Lenihan

on desensitizing techniques. Tr. 3158. Lenihan had arrived without wearing her splint, which she said was uncomfortable, and the therapist provided her with a different splint. Tr. 3158.

In July 2022, Lenihan saw Dr. Keith. Tr. 3895. She reported that her right carpal tunnel syndrome was doing well. Tr. 3895. Her "extensor tendonitis … remain[s] swollen and painful," symptoms which varied with activity. Tr. 3895. She reported left-hand carpal tunnel symptoms. Tr. 3895. Dr. Keith administered a Lidocaine and Kenalog injection in Lenihan's right-hand tendon. Tr. 3894–95.

In September 2022, Dr. Keith performed a median neuroplasty on Lenihan's left wrist to treat her carpal tunnel syndrome. Tr. 3908.

At a follow-up with Dr. Keith in October 2022, Lenihan reported "right trigger thumb, locked extension," and carpometacarpal pain. Tr. 3911. Dr. Keith administered a Lidocaine and Kenalog injection. Tr. 3911.

In January 2023, Lenihan saw Dr. Keith and complained of pain "in many joints" and "tendons" of her left hand. Tr. 3912. Dr. Keith ordered x-rays, which showed mild degenerative changes of Lenihan's left hand without acute bone abnormalities. Tr. 3917.

In February 2023, Dr. Keith completed a medical questionnaire on Lenihan's behalf. Tr. 3919. He listed Lenihan's diagnoses as hand arthritis and carpal tunnel syndrome in the right wrist. Tr. 3919. Dr. Keith opined that Lenihan could "occasionally" perform fine and gross manipulation with her left

hand and "constantly" perform fine and gross manipulation with her right hand. Tr. 3919. She could not effectively perform fine and gross movements, which were described as preparing a simple meal and feeding oneself, taking care of personal hygiene, sorting and handling papers or files, or placing files in a file cabinet at or above waist level. Tr. 2919. Dr. Keith wrote that Lenihan experienced moderate pain. Tr. 3919.

On the same day, on a separate form, Dr. Keith opined that due to left hand pain, Lenihan would be off task for at least 20 percent of a workday. Tr. 3920.

*State agency opinions*[3]

In July 2020, Rebecca R. Neiger, M.D., reviewed Lenihan's medical records. Tr. 601–05. Regarding Lenihan's physical residual functional capacity[4] (RFC), Dr. Neiger concluded that Lenihan could occasionally lift and carry 50 pounds, frequently lift and carry 20 pounds, and stand and walk for

---

[3]     When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[4]     An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

about six hours total in an eight-hour workday. Tr. 604. Lenihan could frequently handle and finger with her right hand, due to carpal tunnel syndrome.[5] Tr. 605. She had postural and environmental limitations. Tr. 604–05. In November 2020, Diane Manos, M.D., agreed with Dr. Neiger's findings. Tr. 625–27.

*Hearing testimony*

Lenihan, who was represented by counsel, testified at both of the administrative hearings.

*April 2021 hearing*: When asked why she was unable to work, Lenihan cited her hand pain. Tr. 580. She has had carpal tunnel syndrome for years. Tr. 582. She has seen several doctors for this problem, but the problem seemed to get worse. Tr. 580. Her wrist hurt and the pain went up into her elbow. Tr. 580. Her doctor suggested carpal tunnel surgery, but Lenihan hadn't had surgery and wasn't sure what the reason was for the delay. Tr. 581–82.

Lenihan stated that she also has pain in her thumb. Tr. 587. She can't open jars—her son opens them for her. Tr. 587. A few days before the hearing,

---

[5]    "'Frequently' is a term of art in the disability context" and means "activity that is performed … from as little as 1/3 of the time up to (but not exceeding) 2/3 of the workday." *See Woodall v. Berryhill*, No. 1:17-cv-1289, 2018 WL 3133442, at *8 (N.D. Ohio June 11, 2018) (citing the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix C,* U.S. Dept. of Labor (1993) and Soc. Sec. Ruling 83-10, 1983 WL 31251, at *6 (SSA Jan. 1, 1983)), *report and recommendation adopted,* 2018 WL 3126552 (N.D. Ohio June 26, 2018). "By contrast, an activity performed 'constantly' exists 2/3 of the workday or more." *Woodall*, 2018 WL 3133442, at *8 (citing *Selected Characteristics, supra,* and Soc. Sec. Ruling 83-10).

she had to stop while making pancakes because flipping the pancake was difficult. Tr. 587. She wears a brace every day for most of the day. Tr. 587. The brace immobilizes her thumb. Tr. 587–88. She also has a sling, which she wears at night. Tr. 588.

*February 2023 hearing*: Lenihan testified that she is right-handed. Tr. 556. She drives a car, albeit "[v]ery little." Tr. 556. When asked about the medical procedures performed on her hands, Lenihan explained that she had carpal tunnel release surgery on her right hand. Tr. 557. During this surgery, the doctor also repaired torn tendons by her pinkie finger and "did something with [her] thumb." Tr. 557. She has some pain, and the doctor thinks that her tendons have torn again and will schedule another surgery. Tr. 557–58. Her thumb and first finger go numb. Tr. 558. For example, when she tries to pick up her medication off the counter, she "can't feel them and struggle[s] with that." Tr. 558.

Lenihan had unsuccessful surgery on her left hand. Tr. 558. She has severe pain and her hand is in a cast. Tr. 558. In November 2022, she had a cortisone shot that "accidentally hit [her] nerve." Tr. 558. She has trigger finger in her thumb. Tr. 558. She has a lot of scar tissue in her palm, which is "extremely swollen and painful." Tr. 558. She was scheduled to undergo an MRI the week after the hearing and plans to have another left-hand surgery. Tr. 559.

11

Lenihan stated that her hands go numb, causing her to drop whatever she is holding—she uses paper plates and plastic cups because she has broken most of the dishes in her house. Tr. 559. She did not think she could lift even a couple of pounds with her hands. Tr. 559. She could take a shower and "get dressed okay." Tr. 563. Her adult son, who lives with her, performs the household chores. Tr. 563.

The ALJ discussed with the vocational expert Lenihan's past work as a personnel clerk, personnel manager, and billing typist. Tr. 569. The ALJ asked the vocational experts to determine whether a hypothetical individual with the same age, education, and work experience as Lenihan could perform Lenihan's past work or any other work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 569–71. The vocational expert answered that such an individual could perform all of Lenihan's past jobs and the following, additional jobs in the national economy: cleaner housekeeper, cashier, and deli clerk. Tr. 571.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe

impairments: right wrist osteoarthritis, non-displaced fracture of lateral malleolus of right fibula, major depressive disorder, carpal tunnel syndrome, anxiety disorder, alcohol addiction disorders, and post-traumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand, sit, and walk for 6 hours of an 8-hour workday. She can frequently use a ramp or stairs; never climb ladders, ropes, or scaffolds. She can frequently handle, finger, and feel with the bilateral upper extremities. The claimant must avoid high concentrations of extreme cold, smoke, fumes, pollutants, and dust. She must entirely avoid dangerous machinery and unprotected heights. The claimant can do complex and detailed tasks and can do simple (routine) tasks; can respond appropriately to supervision, coworkers, and usual work situations and can deal with changes in all work settings; can focus attention on work activities for at least 2 hours at a time and can stay on task at a sustained rate such as initiating and performing a task that she understands and knows how to do; can work at an appropriate and consistent pace and can complete tasks in a timely manner; can ignore or avoid distractions while working and can change activities or work settings without being disruptive.

6. The claimant is capable of performing past relevant work as a personnel clerk. This work does not require the performance of work-related

13

activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2019, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. 18–31.

### Standard for Disability

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.    What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.    Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court ... asks whether" the "existing administrative record ... contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*

15

*v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

Lenihan argues that when the ALJ evaluated her allegations of hand and arm symptoms, he did not comply with the criteria set forth in Social Security Ruling 16-3p. Doc. 7, at 13.

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ considers medical evidence, the claimant's statements, other information provided by medical sources, and any other relevant evidence in the record. *See* Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017); 20 C.F.R. § 404.1529. Other relevant evidence includes: daily activities; the location, duration, frequency, and intensity of pain or symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication, to relieve pain; any measures used to relieve pain; and "[o]ther factors concerning … functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c). "The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence." *Hatcher v. Berryhill*, No. 1:18-cv-1123, 2019 WL 1382288, at *15 (N.D. Ohio Mar. 27, 2019) (citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005)).

The ALJ summarized Lenihan's testimony at the second hearing and allegations in her disability application as follows:

> the claimant alleged that she has multiple conditions, including post-traumatic stress disorder, anxiety, and carpal tunnel (1E:2). The claimant testified that she has had multiple surgical procedures on her right hand; she indicated that her thumb and first finger continue to go numb and that she is unable to feel her medications when picking them up off of the counter. She stated that she needs additional surgery to her right hand to treat torn tendons but is unsure as to when it will be done. The

> claimant indicated that she has had surgery on her left hand that was not successful; she described symptoms including severe left-hand pain, trigger finger in her thumb, and swelling. She believed that she would need additional surgery on her left hand. The claimant testified that she uses paper plates because she will drop things due to hand numbness.

Tr. 22–23. The ALJ then commented on Lenihan's statements about her leg, which she had broken; her memory problems; and her mental health symptoms and attendant treatment. Tr. 23. He noted that Lenihan had testified that "her son does the grocery shopping and helps her around the house." Tr. 23. The ALJ concluded:

> Despite these allegations, the claimant indicated that she is able to drive, but drives very little. She also testified that she is able to shower. She indicated that she had possibly been treated by a clinical psychologist on only once occasion while she was hospitalized (Testimony). Thus, the claimant has described daily activities that are inconsistent with her complaints of disabling symptoms and limitations.

Tr. 23. Lenihan asserts that "the ALJ's brief discussion of the medical evidence of record did not identify any inconsistencies between [Lenihan's] statements and the underlying record," and that the ability to take a shower and drive were not inconsistent with Lenihan's allegations. Doc. 7, at 18; Doc. 10, at 4.

Lenihan's allegations were not obviously inconsistent with one another—Lenihan didn't testify that her hands were completely useless. If the ALJ believed that her ability to shower and drive a car "very little" was inconsistent with her reports of symptoms and limitations, he was required to

explain why. *See* Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *10 ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007) ("[W]hile … determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence").

The Commissioner argues that the ALJ "gave more than an adequate explanation of his consideration of [Lenihan's] subjective complaints." Doc. 9, at 10. In support, he cites the ALJ's paragraph, cited above, and other parts of the ALJ's decision in which, the Commissioner alleges, the ALJ explained his consideration of Lenihan's allegations. *Id.* (citing Tr. 23–24, 28). But the Commissioner's citation to other portions of the ALJ's decision fares no better than his reliance on the passage cited above. For instance, after the passage cited above, the ALJ wrote:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the medical evidence, as the objective findings in the case fail to provide strong support for the claimant's allegations of disability symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than the above listed residual functional capacity.

Doc. 24. The ALJ went on to recite medical evidence, including treatment records describing Lenihan's hand and wrists impairments; her knee, foot and ankle issues; her mental health issues; and her substance abuse issues. Tr. 24–27. The ALJ then concluded:

> Based on the medical evidence as a whole documenting the claimant's right wrist osteoarthritis, non-displaced fracture of lateral malleolus of right fibula, major depressive disorder, carpal tunnel syndrome, anxiety disorder, alcohol addiction disorders, and post-traumatic stress disorder, I find that the claimant is limited to work at a reduced range of light exertional activities.

Tr. 27. The problem, however, is that while the ALJ recited evidence of Lenihan's hand and wrist impairments, he didn't provide any analysis. Tr. 24–26. Merely reciting medical evidence does not suffice as an explanation. *See, e.g., Gilliam v. Comm'r of Soc. Sec.*, No. 14-12335, 2015 WL 3580502, at *17 (E.D. Mich. June 5, 2015) ("a court does not merely review an ALJ's ability to regurgitate facts but rather examines the cogency of the ALJ's analysis").

It is true that the ALJ referenced a treatment note from a colonoscopy in April 2022 as showing an "unremarkable" physical exam. Tr. 26. But it is not clear how this evidence factored into the ALJ's decision. The exam only noted that Lenihan's "extremities" were "normal," with "no deformities, edema, clubbing[,] … skin discoloration," or ulcers and with "[g]ood capillary refill." Tr. 3317. This doesn't show that Lenihan's allegations regarding her undisputed hand and wrist impairments were "inconsistent" with the record. As Lenihan remarks, Doc. 7, at 18, the gastroenterologist's notes about Lenihan's

20

extremities, offered in the context of a colonoscopy, hardly constitute substantial evidence to support discounting her reported symptoms about her wrist and hand. The ALJ also commented that a treatment note from Lenihan's Covid-19-related emergency room visit in June 2022 showed that Lenihan's "musculoskeletal system was noted to be unremarkable, with no signs of injury." Tr. 26 (citing Tr. 3255). The emergency room doctor found that Lenihan had "no signs of injury," a normal range of motion in her cervical spine, and no tenderness or edema in her legs. Tr. 3255. It is not apparent what importance the ALJ attached to this treatment record, and the ALJ didn't offer an explanation.

The Commissioner says that the ALJ's decision must be read as a whole, and cites to other areas of the ALJ's decision that, he argues, can be read to explain how the ALJ evaluated Lenihan's allegations. Doc. 9, at 10. The Commissioner cites to the ALJ's step three findings and his evaluation of the opinion evidence. *Id.* (citing Tr. 20, 28). This circular argument is not well-taken for the simple reason that in these portions of the decision the ALJ cited the same facts to support his determination—that Lenihan could drive a car, Tr. 20 (step three discussion), and that Lenihan could drive a car and shower, Tr. 28 (evaluation of Dr. Keith's opinion). Repeated reliance on these two activities is not, by virtue of that repeated reliance, enough to transform insufficient analysis into sufficient analysis.

The Commissioner offers other reasons why, he believes, Lenihan's allegations of symptoms are not consistent with the record. Doc. 9, at 12. But this Court reviews the ALJ's decision, not the reasons that the Commissioner now believes that the ALJ should have provided. *See Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 808 (6th Cir. 2018) ("[A]n agency's actions must be upheld, if at all, on the basis articulated by the agency itself, and not based on appellate counsel's post hoc rationalization[s]") (internal quotation marks and citations omitted).

The Commissioner points out that the ALJ evaluated the opinions of the state agency physicians, who "concluded that [Lenihan] could perform medium work but only frequently handle and finger with the right due to carpal tunnel syndrome on the right." Doc. 9, at 12 (citing the opinions, Tr. 604–05, 625–27). But the ALJ appeared not to realize that the state agency reviewers included manipulative limitations—he only referred to their "postural and environmental limitations." Tr. 28. As the Commissioner points out, Doc. 9, at 12, the reviewers found that Lenihan could frequently handle and finger with her right hand due to carpal tunnel syndrome. Tr. 605, 626. So the ALJ's follow-up comment—that the opinions were unpersuasive because Lenihan had "additional … manipulative limitations from her right wrist osteoarthritis … and bilateral carpal tunnel syndrome status post-surgery," Tr. 28, is confusing because the only right-handed limitation the ALJ added to Lenihan's RFC was that she could frequently feel. Tr. 22. It's not clear if the ALJ intended

the ability to frequently feel to account for Lenihan's right wrist osteoarthritis and post-surgical carpal tunnel status, or if he mis-read the state agency reviewers' opinions and intended greater handling and fingering limitations. Either way, the ALJ's evaluation of the state agency reviewers' opinions doesn't satisfy the requirement that the ALJ provide "specific reasons" that are "clearly articulated so [that] … any subsequent reviewer can assess how the adjudicator evaluated [Lenihan's] symptoms."[6] *See* Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *10.

Finally, the Commissioner, in a footnote, argues that at the second hearing, the vocational expert testified that "there would be over two million jobs that [Lenihan] could perform if she could handle, finger, and feel occasionally with the left, non-dominant hand, and frequently handle, finger and feel with the right, dominant hand." Doc. 9, at 13 n.9 (citing Tr. 571–72).

---

[6]     In support of this argument, the Commissioner cites *Kinkaid v. Comm'r of Soc. Sec.*, No. 1:23-cv-1115, 2024 WL 2159990, at *13 (N.D. Ohio Apr. 23, 2024), *report and recommendation adopted*, 2024 WL 2155927 (N.D. Ohio May 14, 2024). In *Kinkaid*, the court found that the ALJ provided ample reasoning elsewhere in his decision to support his evaluation of the claimant's allegations, including daily activities; pertinent, normal exam findings; conservative treatment; and state agency reviewers' opinions, which the ALJ found to be persuasive. 2024 WL 2159990, at 12–13. Here, the ALJ did not provide ample reasoning elsewhere in his decision and he found the state agency reviewers to be unpersuasive. Tr. 20–29. The Commissioner also cites *Roberts v. Comm'r of Soc. Sec.*, No. 3:22-cv-51, 2023 WL 4243225, at *18 (N.D. Ohio Jan. 23, 2023), for the proposition that an ALJ's error when evaluating the state agency reviewers' opinions is harmless when the RFC is more restrictive than the state agency reviewers' opinions. Doc. 9, at 13. But Lenihan hasn't challenged the ALJ's evaluation of the state agency reviewers' opinions, so *Roberts* is inapposite.

"Therefore," the Commissioner asserts, if Lenihan "had greater manipulative limitations than noted in the RFC, there would still be a significant number of jobs in the national economy that she could perform." *Id*. But it's possible that the ALJ could find that Lenihan could occasionally,[7] rather than frequently, handle, finger, and feel with her right, dominant hand. The vocational expert at the first hearing testified that such an individual could not perform any work. Tr. 596. So the vocational expert testimony doesn't show that "remand would be an idle and useless formality" in this case. *See Hall v. Astrue*, No. 1:09-cv-2514, 2010 WL 5621291, at *14 (N.D. Ohio Dec. 23, 2010) (finding no error but noting that, even if there was error, a remand would not be warranted because the hearing testimony made clear that the claimant could still perform the jobs that the vocational expert had identified), *report and recommendation adopted*, 2011 WL 194615 (N.D. Ohio Jan. 20, 2011).

In sum, the ALJ failed to sufficiently evaluate Lenihan's allegations regarding her hand and wrist symptoms and limitations, and the ALJ's decision, read as a whole, does not provide the necessary explanation. So the ALJ's decision should be vacated. *See Jordan*, 548 F.3d at 422.

---

[7]     "Occasionally" means performing and activity for "up to 1/3 of the time." *See Selected Characteristics, supra*, and Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5.

**Conclusion**

For the reasons explained above, I recommend that the Commissioner's decision be vacated and remanded for proceedings consistent with this opinion.

Dated: September 16, 2024

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).